FILED
MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURTS
05/07/2023 05:02 PM
CV 2023 05 0927

**IN THE COURT OF COMMON PLEAS**
**BUTLER COUNTY, OHIO**
**CIVIL DIVISION**

| | |
|---|---|
| Kathy J. Wright<br>4688 Westmeath Ct.<br>Middletown, Ohio, 45042 | )<br>)<br>)<br>) |
| and | )<br>) |
| Kerry L. Byrd<br>306 Kenec Drive<br>Middletown, Ohio 45042 | )<br>)<br>)<br>) |
| and | )<br>) |
| Brenda Louise Byrd<br>306 Kenec Drive<br>Middletown, Ohio 45042 | )<br>)<br>)<br>) |
| and | )<br>) |
| Donna Warman<br>1333 Double Eagle Court<br>Lebanon, Ohio 45036 | )<br>)<br>) |
| and | )<br>) |
| David W. Creach<br>7321 Elk Creek Road<br>Middletown, Ohio 45042 | )<br>)<br>)<br>) |
| and | )<br>) |
| Stephen L. Snider<br>1 Mariner's Cove<br>Cincinnati, OH 45249 | )<br>)<br>)<br>) |
| And | )<br>) |
| Jacqueline Hunter<br>3207 Central Avenue<br>Middletown, Ohio 45044 | )<br>)<br>)<br>) |

CASE NO.:

JUDGE:

**COMPLAINT**

1

and                                                      )
                                                         )
Amanda Young                                             )
6868 West Alexandria Road                                )
Middletown, Ohio 45042                                   )
                                                         )
and                                                      )
                                                         )
Stefan Wannemacher                                       )
1617 Gage Drive                                          )
Middletown, Ohio 45042                                   )
                                                         )
and                                                      )
                                                         )
Gwendolyn H. Wannemacher                                 )
1617 Gage Drive                                          )
Middletown, Ohio 45042                                   )
                                                         )
and                                                      )
                                                         )
June Mann fka June Hom                                    )
133 Zachery Drive                                        )
Middletown, Ohio 45042                                   )
                                                         )
and                                                      )
                                                         )
Elizabeth C. Baxter                                      )
7000 Wallace Avenue                                      )
Cincinnati, Ohio 45243                                   )
                                                         )
and                                                      )
                                                         )
David B. Hunter                                          )
3207 Central Avenue                                      )
Middletown, Ohio 45044                                   )
                                                         )
and                                                      )
                                                         )
Mary Ann DeHart                                          )
177 Minnick Street                                       )
Franklin, Ohio 45005                                     )
                                                         )
and                                                      )
                                                         )
Diane Moore                                              )
4560 Shawnray Dr. #145                                   )

Middletown, Ohio 45044    )
              )
   Plaintiff(s),    )
              )
vs.            )
              )
John David Terrill    )
601 Hill Street     )
Middletown, Ohio 45042    )
Individually and in his    )
Capacity as a Director of The Butler )
Heritage Federal Credit Union  )
              )
and          )
              )

Vincent Lovejoy     )
1500 Middletown Eaton Road  )
Middletown, Ohio 45042)   )
Individually and in his    )
Capacity as a Director of The Butler )
Heritage Federal Credit Union  )
              )
and          )
              )
James Hall      )
3113 Bexley Drive    )
Middletown, Ohio 45041    )
Individually and in his    )
Capacity as a Director of The Butler )
Heritage Federal Credit Union  )
              )
and          )
              )
Robert J. Fraley     )
675 Kirby Road     )
Lebanon, Ohio 45036    )
Individually and in his    )
Capacity as a Director of The Butler )
Heritage Federal Credit Union  )
              )
and          )
              )
Ernest W. Howard    )
201 Batsey Drive     )
Middletown, Ohio     )

3

Individually and in his                                )
Capacity as a Director of The Butler                   )
Heritage Federal Credit Union                          )
                                                       )
and                                                    )
                                                       )
Butler Heritage Federal Credit Union                   )
660 N. University Blvd.                                )
Middletown, OH 45042                                   )
                                                       )
And                                                    )
                                                       )
MyUSA Credit Union                                     )
fna MidUSA Credit Union                                )
3600 Towne Blvd.                                       )
Middletown, OH 45005                                   )
                                                       )
and                                                    )
                                                       )
MyUSA Credit Union Board of Directors                  )
3600 Towne Blvd.                                       )
Middletown, OH 45005                                   )
                                                       )
and                                                    )
                                                       )
James C. Miles, President & CEO                        )
Of MyUSA Credit Union                                  )
3600 Towne Blvd                                        )
Middletown, OH 45005                                   )
Individually and in their Official Capacity            )
of President and CEO                                   )
                                                       )
and                                                    )
                                                       )
Margaret Hale, Director of Member                      )
Services of MyUSA Credit Union                         )
Individually and in their                              )
Official Capacity                                      )
3600 Towne Blvd                                        )
Middletown, OH 45005                                   )
Individually and in their Official Capacity            )
of Director of Member Services                         )
                                                       )
and                                                    )
                                                       )
Lisa Parks, Branch Manager                             )

4

```
3600 Towne Blvd                                )
Middletown, OH 45005                           )
Individually and in their official capacity    )
Of Branch Manager                              )
                                               )
and                                            )
                                               )
Kevin Dreyer, Accounting &                     )
Finance Manager,                               )
3600 Towne Blvd                                )
Middletown, OH 45005                           )
Individually and in their Official Capacity,   )
                                               )
        Defendants.                            )
```

Plaintiffs, as their Complaint against the Defendants named herein, state as follows:

<u>IDENTITY OF THE PARTIES</u>

1.      Plaintiffs and each of them are a citizen and resident of this State and this Judicial District and within the venue of this Court, and/or have engaged in business and activities within this County and the Jurisdiction and Venue of this Court, and are each valid and bona fide Members of and Depositors in the Butler Heritage Federal Credit Union, and therefore the legal and equitable owners of the Butler Heritage Federal Credit Union, formerly known as the Middletown City Employees Federal Credit Union (hereinafter referred to as "BHFCU").

2.      Defendants James C. Miles, Margaret Hale, Lisa Parks and Kevin Dreyer are employees of MyUSA Credit Union fna MIDUSA Credit Union (hereinafter referred to as MyUSA), and who have each participated in the management of BHFCU and in the open and partly secret planning of a merger between MyUSA and BHFCU, by MyUSA acquiring all of the assets, and therefore the Members, of BHFCU.

3.      Defendant BHFCU is a federally charted credit union and under federal regulatory authority of the National Credit Union Administration (NCUA); and Defendant MyUSA is a

credit union regulated by the State of Ohio, and one or both are duly organized as such under Ohio and/or Federal laws; and has offices in and conducted activities related to the allegations in this case within the venue and jurisdiction of this Court. The BHFCU operates under its own Charter, issued on or about December 11, 1956, and which in and of itself has value as an independently charted Credit Union.

4.     BHFCU is operated by a Board, whose members vary from time to time, and are hereinafter referred to collectively, individually, jointly, and severally, as the "Board." Defendants John Terrill, Vincent Lovejoy, James Hall, Robert Fraley and Ernest Howard is or were each, and at all times relevant hereto, members of, either de facto or otherwise, the governing Board of Defendant BHFCU, and exercising the authority, and responsibilities of that office and position; and are each also residents and citizens of this State and/or this County, and also conducted activities related to the allegations in this case within the venue and jurisdiction of this Court.

<u>FACTUAL ALLEGATIONS</u>

5.     This Complaint centers around the actions and conduct of the Directors of the BHFCU, who through their lack of knowledge and experience in management of a credit union, and their resulting decisions, actions, neglect, dereliction of duties and unwillingness to act as a competent Board or Board Director, or to acquire the necessary expertise or advice to do so; and have not acted in the best interest of BHFCU, or to its employees or its members, who are each in fact the actual and only Owners of BHFCU. Plaintiffs allege that the Board of Directors, through affirmative acts and by omission, engaged in a civil conspiracy with MyUSA and its Employees to acquire the assets of BHFCU free of charge or compensation, under the guise of a "merger," necessitated if at all due to the mismanagement of the BHFCU Board. The Board of Directors and MyUSA employees have coerced votes from members, have acquired votes illegally

6

in violation of the BHFCU Charter and Bylaws, and in direct violation of the National Credit Union Administration (NCUA) Code of Federal Regulations, Title 12 C.F.R. Section 708b.106, et seq.; and further without consideration of and in disregard of the inherent and great value BHFCU has as an independently charted and federally insured Credit Union.

6.      During the times relevant to this Complaint, the BHFCU Board of Directors had received mandated instructions and directives, in the form known as "Documents of Resolutions" or DOR's, given to them by the NCUA, and the Board either violated, ignored, or otherwise did not perform the directives, and in addition, with MyUSA, planned in contravention of the DOR's, and in the course of doing so deceived otherwise un-informed Members in multiple ways, most recently by fraudulently acquiring purported but illegal votes from BHFCU Members to approve a merger, alleged to be justified by the Board's own mismanagement, and give away the BHFCU assets.

7.      The BHFCU Board and MyUSA have not followed the rules of a merger mandated by NCUA and the BHFCU Charter and Bylaws. The BHFCU Board President Defendant John Terrill coerced and manipulated other members of the Board of Directors, has directly conspired with the President and CEO of MyUSA Jim Miles and Margaret Hale and Lisa Parks to plan and accomplish the merger and in an unlawful way. The Board's actions and inactions have depreciated the net worth BHFCU, also creating the artificial appearance of a "need" or merit to a merger. Directors of the BHFCU Board, with MyUSA management in attendance, have falsified BHFCU member's votes at an annual meeting to keep themselves in office and to complete the avoidable and unlawful merger. The Board Defendants have engaged in a civil conspiracy with MyUSA to keep themselves in office until the unlawful merger is complete. On information and belief, the BHFCU Board in conspiracy with MyUSA allowed insurance to pay legal fees for Board members' settlement and fraudulent activities towards employees.

8.      BHFCU has always been solvent and remains so today. As of December 31, 2022,

it had assets exceeding $14,000,000.00. As documented in recent merger documents sent to members on or about March 6, 2023, the assets have increased to over Fifteen Million Dollars ($15,000,000.00) as of January 31, 2023.

9. Due to the aging population of its membership, BHFCU has taken in substantial deposits, but that have not been invested (loaned out), because the Board Defendants and MYUSA (who has been managing BHFCU) have intentionally failed to create or implement an earnings plan as instructed by regulatory authorities, or any plan, or take the necessary action needed to properly manage the deposits to generate the revenue and income needed even to cover ordinary expenses of BHFCU. The Board's gross mismanagement and gross neglect of their fiduciary duties to create an earnings plan, and while having MyUSA manage or mismanage it, has caused the net worth of the BHFCU to drop; and in addition to Defendants spending its members' money for unnecessary and unreasonable expenses and items instead of actions to better manage and promote the well-being of BHFCU.

10. A merger with MyUSA will also result in the member's accounts and funds being insured by private insurance rather than the government authority. NCUA that has always insured the member's accounts. NCUA and FNA Bureau of Federal Credit Unions are government-backed insurers of credit unions in the United States and have insured BHFCU member's accounts since the BHFCU inception in 1956.

11. The Charter and Bylaws of the BHFCU creating and establishing and governing the BHFCU is attached hereto, and is incorporated herein by reference, and is in Defendants' possession.

12. The BHFCU Charter, Article VI (Elections), Sections 1, 2, 3, 4, 5 and 6, have all been routinely and intentionally neglected and violated by the Board. Since 2020, there have

been no nominations as the process is mandated by the Charter for Directors, for the mandated credit committee members, and for the mandated 3 supervisory committee members. Factually there is no credit committee and no functioning supervisory committee.

13. Article X (SUPERVISORY COMMITTEE), Section 1, reads in part: "The supervisory committee shall consist of three members, none of whom shall be directors, and all of whom shall be members of the Credit Union."

14. Section 2 reads in part; "The supervisory committee members shall choose from among their number a chairman and a secretary."

15. Sections 3 reads; "They shall make, at least quarterly, an examination of the affairs of this Credit Union (including an audit of its books), and shall make a written report thereof to the board of directors; and shall make an annual audit and a written report on the condition and affairs of this Credit Union to be submitted to the members at each annual meeting. It shall prepare and forward to the Bureau of Federal Credit Unions (now known as NCUA) such reports as Bureau may require."

16. Section 5 reads: "By unanimous vote the supervisory committee may suspend until the next meeting of members any director, officer, or member of the credit committee. In the event of such suspension the supervisory committee shall call a special meeting of the members to act on said suspension within 7 days thereof. The notice of any such special meeting shall state the purpose for which it is to be held."

17. Section 6. reads; "By affirmative vote of a majority of members, the supervisory committee may call a special meeting of the members to consider any violation of the provisions of the Federal Credit Union act (including any amendments thereto), or of the charter or bylaws of this Credit Union, or to consider any practice of this Credit Union which the committee deems

to be unsafe or unauthorized. Notice of any such special meeting shall be given in the manner elsewhere herein provided for the giving of notice of special meetings of the members."

18.     In 2020 the BHFCU appointed three supervisory committee members that consisted of Defendant Vince Lovejoy, who was also a director, Jordan Terrill, the son of Board member John Terrill, and Rod Hale, the former husband and allegedly close friend of Defendant Margaret Hale. None of them have ever performed or acted as mandated in the Charter.

19.     Prior to 2021 and since that time there have been no meetings of any supervisory committee. Therefore, there has been no supervisory committee to address all of the mandates in Article X, and all actions have been invalid, unlawful, and ultra vires.

20.     Defendant Lovejoy, whose appointment itself is in violation of the Charter, has signed and authorized numerous documents in the capacity of Supervisory Chair such as a Management Agreement with MyUSA.

21.     The appointment of the son of John Terrill as a supervisory committee member, who has never been involved with the Credit Union or with the non-existent supervisory committee affairs, is a conflict of interest and therefore also a breach of fiduciary duty, considering the supervisory committee is charged with the task of overseeing and possibly suspending his father the President of the Board for violations apparent; and further one or more of the Defendants created new qualifications for new board members in conflict with the BHFCU Charter, and for the purpose of deterring or preventing others from becoming Board or Committee members, and although those newly created requirements would in fact have also disqualified one or more of the existing serving members of the Board and/or its committees or offices.

22.     The appointment of Rod Hale because of his relationship with Margaret Hale who

was expected to manage MYUSA is another conflict of interest and breach of fiduciary duty.

23.     Because Vincent Lovejoy is the only purported active member of the supervisory committee and he is in conflict with the Charter as a member of the Board and a Defendant in this complaint, he is in no way likely to act in the supervisory capacity as mandated in Article X of the Charter nor suspend or charge himself, the Board or the Board members with any violation.

24.     This lack of supervisory committee oversight, controlled by the Board of Directors themselves, have caused and allowed many of the allegations herein pertaining to but not limited to the unlawful merger process.

25.     Article V Section 1. reads: "The annual meeting of the members shall be held during January of each year in the county in which the office of this Credit Union is situated, at such time and place as the Board of Directors shall designate." BHFCU's only office is undeniably located in Middletown Ohio and in the County of Butler. The last two annual meetings have been held at MyUSA's office at 3600 Towne Blvd in the Ohio County of Warren. Those were held on December 28, 2021 and December 6, 2022 not in the required month of January.

26.     The Board Defendants herein, with the aid of the MyUSA Defendants, attempted to conduct a "meeting" and a "vote" for approval of the proposed merger, on or around April 4, 2023. No one has released the results to the members, although one or more of the named Defendants were asked and have lied to members about what happened and what they know.

27.     According to an appropriate construction and interpretation of the actual and legally binding Charter and By-Laws of BHFCU, any proposed merger with another institution cannot be approved in the form or manner by which the Defendants herein attempted to do so,

and any resulting "approval" would be unlawful and ultra vires, and including but not necessarily limited to:

A.    Article V Section 5. MEETINGS OF MEMBERS: "Except as hereinafter provided, at annual and special meetings 15 members shall constitute a quorum. If no quorum is present, an adjournment may be taken to a date not fewer than 7 nor more than 15 days thereafter; and the members present at any such adjournment meeting shall constitute a quorum regardless of the number of members present. The same notice shall be given from the adjourned meeting as is prescribed in Section 2 of this Article for the original meeting, and each notice shall be given not fewer than 5 days previous to the date of the meeting as fixed in the adjournment."

B.    The Board has conducted meetings and business without sufficient notice and without a quorum, and including to maintain themselves on the Board.

C.    Article VI Section 4. ELECTION: "No member shall be entitled to vote by proxy, but a member other than a natural person may vote through an agent designated in writing for that purpose. A Trustee, or other person acting in a representative capacity, shall not, as such, be entitled to vote."

D.    At the annual meeting scheduled for December 28, 2021, and at an improper location according to the Charter, and while having the entirety of Article V Section 5 in hand to determine the amount needed for a quorum, and which Article also described in detail the procedure the Board was to use in the event a quorum was not met, Board members John Terrill, Ernie Howard and James Hall acted as if they had made phone calls to relatives and friends for permission to vote for them. Defendant Terrill wrote the names of Jordan Terrill, Roxie Terrill and Rod Hale (Margaret Hale's ex-husband) on the sign in sheet and voted and cast ballots for each of them without them present and even without any written authority. Ernie Howard wrote

12

the names of Ernest Howard Jr., Elaine Howard and Josephin Howard on the sign in sheet and he voted and cast ballots for each of them. James Hall wrote the name Kathy Hall on the sign in sheet and voted and cast a ballot for her.

E.     The Board has conducted meetings and business and taken votes, including for the purported merger, by phone, electronically, by other forms of alleged "proxy," and John Terrill, Ernie Howard and James Hall even faked votes by signatures of persons not present, and including to maintain themselves with their positions.

.28.     On March 6, 2023, and other times leading up to March 17, 2023, members received emails promoting and titled "Member Appreciation Day," wherein the email promotes the giveaway of three "Grand Prizes," being a 50" TV and two $500 Visa Gift Cards. It also promotes a "FREE FOOD TRUCK & SHRED TRUCK EVENT," for Friday, March 17 from 11:30am to 1:30 pm at 660 N. University, which is the address of BHFCU.

29.     The advertisement said nothing about voting, only a lure for free food and prizes.

30.     There was a button link in the email, "ENTER TO WIN". When a member clicks on the link the member is required to enter an account number and last four digits of their social security number, and then the member needs to click on the next link button that says "LOG ON". The next page thanks the member for registering and says their information has been included in the prize drawing pool, and "Please click on the 'Vote Now' button if you wish to cast a ballot on the election." Clicking on the button takes the member to a site to vote wherein there is the "Notice of Special Meeting on Proposal to Merge and Convert to Non-federally Insured Status."

31.     When members first read the email it appears that the "Grand Prizes" are being given away on March 17, at the free food and shred truck events. Once a member has completed

the intended process, the member is told the drawing will not take place until the later date of April 7, 2023, three days *after voting ends*.

32.     The implication from these communications, which are insufficient and non-compliant with the Charter and By-Laws, was to deceptively cause members to proceed to register for prizes and ultimately persuade them to vote, including to vote electronically (not permitted by the existing BHFCU Charter and therefore also in violation of Federal Regulations) for the merger and for private insurance, resulting in an entirely unlawful vote. The email initially has a member believe the drawing will be March 17, while they are at the event, but once the member has completed the intended process, the member sees that the drawing will take place on April 7, three days after voting ends.

33.     On March 6, 2023, the BHFCU Board, in the continuing conspiracy with MyUSA, posted on its website that a merger vote was needed to merge no later than 6:00 p.m. on April 4, 2023, which is only a 30-day advance notice for a vote instead of the 45-day notice for a merger vote per NCUA Regulations. Mailed notices were received by members no earlier than March 8, 2023. Any individual, who did not access the website on March 6, 2022, and receives a letter at a later date, received even less than a 30-day notice. The notice is titled: "Notice of Special Meeting on Proposal to Merge and Convert to Non-federally Insured Status".

34.     According to the Defendants' own amendment dated August 24, 2022, which may be invalid under the Charter, the Notice is for a meeting to vote on a merger that requires a minimum of 45-days' notice. Defendants are unlawfully shortening the time to vote to cause members to have less time for members due diligence by calling it a "special" meeting which requires less notice.

35.     On the Credit Union's website and in the official March 6, 2023, notice mailed to

members, the Directors state: "If you cannot attend the meeting, please complete the ballot and return it to E Space Communications Inc., PO Box 3156, Dublin, OH 43016 by no later than 6:00 PM (ET) on April 4, 2023. To be counted, your ballot must reach E Space Communications Inc. by the date and time announced for the meeting." Thereafter and during the actual meeting, the Board Defendants' arbitrarily and without any advance notice to anyone, extended the voting to 7:09 pm, and only for members actually present.

36.     The "special meeting" that members had been encouraged to attend was noticed to begin (and did begin) at 6:00 PM April 4, 2023; the same minute when voting ended, according to the mandatory (but short) advance notice. Therefore, members did not have any opportunity before the voting to fully ask questions of the Board in a formal setting or official setting about the merger or the change from federal insurance to private insurance; and when questions were asked at the meeting, it was also after voting for most of the members had already occurred, and only one Board Member spoke, and the answers given were deceptive, evasive, incomplete, unresponsive, and even then, was cut off.

37.     That attempted merger described in this Complaint, in addition to being in violation of the BHFCU Charter, is in violation of one or more of the provisions of the Federal governing regulations, Title 12 C.F.R. Section 708b.106, including but not necessarily limited to:

A.     "§ 708b.106 Approval of the merger proposal by members
(a) Advance notice of member vote. Members of the merging credit union must receive written notice at least 45 calendar days, but no more than 90 calendar days, before any member meeting called to vote on the merger proposal."

The first members notice of a meeting/merger was on March 6, 2023 with a posting on the BHFCU website, stating the vote was from "March 6 - April 4 2023," which is only a 30-day notice, and not the required minimum of 45 days for members meeting for a merger, and that's only if a member actually accessed the website. Votes were acquired during the required

15

notification period even before the required meeting to be held for the vote.

B.  "(b) Contents of member notice. While the merging credit union may refer members to attachments for additional information or explanation, the notice provided to members pursuant to paragraph (a) of this section must be in the form set forth in subpart C of this part and contain the following information:
(1) A statement of the purpose of the meeting and the time and place;
(2) A statement that members may vote on the merger proposal in person or by mail ballot (or electronically, if the credit union's Bylaws so permit) received by the merging credit union no later than the date and time announced for the member meeting called to vote on the merger proposal;"

There was no amendment made to the Bylaws to permit an electronic vote for a merger. In the meeting for members on April 4, 2023, the Board President Defendant John Terrill and the MyUSA manager Margaret Hale admitted that there had been no amendments to the Bylaws except one in late 2022, requiring 45-calendar days, but no more than 90 calendar days, before any member meeting concerning a merger. Therefore, there was no amendment to the bylaws permitting electronic votes before the majority of votes were induced (deceptively) and acquired electronically by MyUSA Employees and BHFCU through a third-party E-Space Communications Inc. By NCUA federal regulations all electronic votes should be voided.

C.  "(3) A statement about the availability of a website where members of the merging credit union can share comments and questions about the merger pursuant to paragraph (d) of this section;"

In the members notice of a meeting on the "proposal to merge" letter, signed by Defendant John Terrill, there is no such statement or website. Therefore, credit union members had no opportunity to voice opinions or share opinions with other members before voting.

D.  "(4) A summary of the merger plan, including but not necessarily limited to:
(i) A statement that the merging credit union does or does not have a higher net worth percentage than the continuing credit union;
(ii) A statement as to whether the members of the merging credit union will receive a share adjustment or other distribution of reserves or undivided earnings, including a summary of reasons for the decision and, at the merging credit union's discretion, a short explanation about the capital level;
(iii) An explanation of any changes to ATM access or to services such as life

16

savings protection insurance or loan protection insurance;

(iv) If the continuing credit union is not federally insured, an explanation of any changes related to federal share insurance; and

(v) A detailed description of all merger-related financial arrangements. This description must include the recipient's name and title as well as, at a minimum, the amount or value of the merger-related financial arrangement expressed, where possible, as a dollar figure;

(5) A statement of the reasons for the proposed merger'"

The member notice letter only stated: "the directors of the participating credit unions have concluded that the proposed merger is desirable for the following reasons". All reasons given in the letter only had to do with multiple branch offices and an increased range of services by MyUSA. The notice said nothing about any of the true reasons members would be entitled to know about such as; pressure on the Board from NCUA due to declining net worth caused by the neglect of the Board of Directors to act on DORs from NCUA and the Board of Directors failure to act on at least three preliminary warning letters from NCUA to increase income by creating an earnings plan. The reasons given obscurely were to sell credit union members on voting yes, while avoiding full transparency to credit union members which could result in a no vote.

E.      "(6) A statement identifying the physical locations of the merging credit union by street address, stating whether each location is to be closed or retained, and a list of branches of the continuing credit union by street address that are located in reasonable proximity to the merging credit union's locations.

(c) Additional documents. The notice provided to members pursuant to paragraph (a) of this section shall be accompanied by the following separate documents:

(1) The current financial statements for each credit union and a consolidated financial statement for the continuing credit union;

(2) Any additional information or explanatory material that the merging credit union wishes to provide that does not detract from the required disclosures and gives further detail to members regarding information disclosed pursuant to paragraph (b) of this section; and

(3) A Ballot for Merger Proposal.

(d) Member information. Within 30 calendar days of receiving the notice provided to members pursuant to paragraph (a) of this section, members may jointly or individually submit a comment about the merger to the NCUA. The NCUA will post these comments on a website accessible to credit union members.

(e) Posting member comments. The NCUA reserves the right to not post comments that it reasonably believes:

(1) Are false or misleading with respect to any material fact;

(2) Omit a material fact necessary to make the statement in the material not false or misleading;

(3) Relate to a personal claim or personal grievance, or solicit personal gain or business advantage by or on    behalf of any party;

(4) Address any matter, including a general economic, political, racial, religious, social, or similar cause that is not related to the proposed merger;

(5) Directly or indirectly and without expressed factual foundation impugn a person's character, integrity, or reputation;

(6) Directly or indirectly and without expressed factual foundation make charges concerning improper, illegal, or immoral conduct; or

(7) Directly or indirectly and without expressed factual foundation make statements impugning the safety and soundness of the credit union.

(f) Clear and conspicuous disclosures required. Any information required by paragraph (b) of this section to be disclosed on the notice provided to members pursuant to paragraph (a) of this section must be legible, written in plain language, and reasonably understandable by ordinary consumers.

(g) Approval of a proposal to merge. Approval of a proposal to merge a federally insured credit union into a federally insured credit union requires the affirmative vote of a majority of the members of the merging credit union who vote on the proposal. Members must be members as of the record date to vote. If the continuing credit union is not federally insured, the requirements of subpart B of this part also apply, and the merging credit union must use the appropriate form ballot and notice in subpart C of this part unless the Regional Director approves the use of different forms. If the continuing credit union is federally insured, use of the sample form notice, ballot, and certification of vote forms in subpart C of this part will satisfy the requirements of this subpart.

This information was not given in the members notice to merge and clearly there was not time for it since the time given in the notice was not in compliance with the Regulations; and it certainly was not "clear and conspicuous"; and was misleading both by inaccurate or false information and also by omission of material facts.

FIRST CLAIM
DECLARATORY JUDGMENT – RIGHTS OF MEMBERS

38.    Plaintiffs reiterate all prior allegations as if restated herein.

39.    Plaintiffs, for themselves and for all other members, are entitled to a declaratory judgment by this Court as to the related rights of the BHFCU members and particularly as to notice and voting on any "merger," and orders granting to them injunctive relief enforcing the

18

Charter and By-Laws and member rights and the applicable CFR; and irreparable harm and other damages will be caused if same if not declared and violations of same not restrained and enjoined.

SECOND CLAIM
DECLARATORY JUDGMENT – VOIDING ANY PURPORTED MERGER

40.    Plaintiffs reiterate all prior allegations as if restated herein.

41.    Plaintiffs, for themselves and for all other members, are entitled to a declaratory judgment by this Court as to the validity or invalidity of any purported voting for or against the purported "merger," and orders granting to them injunctive relief enforcing the Charter and By-Laws and member rights and the applicable CFR; and prohibiting any merger that is not in compliance with the governing rules and laws; and irreparable harm and other damages will be caused if same if not declared and violations of same not restrained and enjoined.

THIRD CLAIM
BREACH OF FIDUCIARY DUTY AND NEGLIGENCE

42.    Plaintiffs reiterate all prior allegations as if restated herein.

43.    defendants, and each of them, violated the rights of the Plaintiffs, and all other BHFCU members, by engaging in the conduct described herein, and others, including the mismanagement of the BHFCU, the termination and retaliation against and other circumstances of the two managers, the management of the BHFCU since, and the process toward and undertaking of the "merger"; and same is in violation of the By-Laws and/or other State or Federal law; and is in bad business judgment and not in the best interests of the Plaintiffs, member owners of the BHFCU.

44.    Defendants, and each of them, and on an individual liability basis, owed and owe fiduciary duties to each Member, and to each Plaintiff, to act in their/his/her best interests, and

19

otherwise, and breached those duties as alleged herein; and by doing so have caused damage to each Plaintiff; and also breached their duty of care to the Plaintiffs and to the other members, and past members who have in fact left as a result of the mismanagement; and by decisions that no reasonable financial officer or director would have undertaken, and in addition was in bad faith and while knowingly making bad business judgments.

45. Defendants, and each of them, are therefore liable for and to compensate Plaintiffs and the members for damages incurred and proximately caused by the breach of fiduciary duties, including economic, non-economic, and punitive.

WHEREFORE, Plaintiffs would demand judgment against the Defendants, and each of them, individually, jointly, and severally, as follows:

A. For declaratory judgment against Defendants as to rights of the Members including to notice, voting, and approval of any merger and if any merger is applicable, a full disclosure as to why and adequate time for members' due diligence.

B. Injunctive relief compelling the enforcement of same and of the By-Laws, and prohibiting violation thereof, and declaring void any actions taken in violation of said By-Laws and judgment, past or future, including the purported pending "merger";

C. Injunctive relief to stop the pending proposed merger and its process and an order to disallow electronic votes of any kind because of potential fraud including taking down email links and propaganda to acquire votes unlawfully;

D. Damages in excess of $25,000.00; An award to Plaintiffs for attorney's fees, the costs of this action, and any and all other appropriate orders.

THOMAS G. EAGLE CO., L.P.A

*/s/ Thomas G. Eagle*
**Thomas G. Eagle** (#0034492)

Counsel for Plaintiffs
3400 N. State Rt. 741
Lebanon, Ohio 45036
Phone: (937) 743-2545
Fax: (937) 704-9826
E-mail: eaglelawoffice@cs.com

## **REQUEST FOR SERVICE**

**TO THE CLERK:** Please issue and serve a copy of the foregoing Complaint upon the Defendants and each of them at the addresses listed in the caption above and by PERSONAL/RESIDENCE SERVICE – PROCESS SERVER.

_/s/ Thomas G. Eagle_
**Thomas G. Eagle** (#0034492)