## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**KATHY J. WRIGHT, et al.,**

      **Plaintiffs,**

        **v.**

**JOHN DAVID TERRILL, et al.,**

      **Defendants.**

**Case Nos. 1:25-cv-50**
**1:25-cv-53**
**1:25-cv-57**

**JUDGE DOUGLAS R. COLE**

## OPINION AND ORDER

Plaintiffs filed two cases in the Butler County Court of Common Pleas. After nearly two years of litigation in the first state case and about a year of litigation in the second, they have both found their way to this Court, with one of the two removed state cases sprouting a third federal case along the way. Plaintiffs have moved to remand each of the three now-federal cases back to state court. But for the reasons stated more fully below, the Court **DENIES** Plaintiffs' Motions for Remand to State Court (No. 50, Doc. 13; No. 53, Doc. 11; No. 57, Doc. 10).

## BACKGROUND

Before delving into the factual and procedural background, the Court begins with some housekeeping. This Opinion and Order addresses motions to remand filed in three related federal-court cases that arise out of two state-court cases.[1] The first two federal cases (1:25-cv-50 and 1:25-cv-53) arise out of one Butler County Court of

---

[1] Because the Opinion and Order address three motions filed across three dockets, when citing the various filings, the Court will indicate the docket on which the filing is found by citing the case number's terminal digits before the document number and PageID. "No. 50" refers to case 1:25-cv-50; "No. 53" refers to case 1:25-cv-53; "No. 57" refers to case 1:25-cv-57.

Common Pleas case: *Wright v. Terrill*, No. 23−05−0927. The third federal case (1:25-cv-57) arises out of a second Butler County Court of Common Pleas case: *Wright v. Terrill*, No. 24-04-0781. Here's the story.

Start with the first state-court case ("the 0927" one). Plaintiffs—some of Defendant Butler Heritage Federal Credit Union's (BHFCU) members—believed the way in which BHFCU's officers and directors were operating the credit union wasn't up to snuff. (No. 50, Compl., Doc. 3, #130–42). And they viewed an impending merger between BHFCU and Defendant MyUSA Credit Union as an illegal attempt to sell off BHFCU's assets and cover up the BHFCU Board's mismanagement. (*Id.*). So, on May 7, 2023, Plaintiffs sued BHFCU, MyUSA Credit Union, and various Board members of each entity in the Butler County Court of Common Pleas, alleging breach of fiduciary duty and negligence. (*Id.* at #143–44). They sought a declaratory judgment voiding the proposed merger and enforcing their rights as members. (*Id.* at #142–43).

After Plaintiffs filed that state-court complaint, things proceeded as lawsuits often do. Plaintiffs moved for a temporary restraining order (TRO) and/or preliminary injunction (PI) to block the merger. (No. 50, Doc. 13-1). The state-court magistrate judge granted the TRO, and eventually, the PI. (No. 50, Doc. 1-1, #11, 16; No. 50, Doc. 13-4). Defendants then moved to dismiss two of Plaintiffs' claims for lack of subject-matter jurisdiction. (No. 50, Doc. 13-3). And they moved to set aside the state-court magistrate's decision on the TRO and PI, arguing that the state court was "not the proper forum for Plaintiffs to seek enforcement of the federal laws and regulations

2

pertaining to federally insured credit unions." (No. 50, Doc. 13-5, #380). The state-court judge denied both motions. (No. 50, Docs. 13-7, 13-13).

But then two things happened that led this first state-court suit to land in federal court under two separate case numbers: a discovery dispute and a conservatorship.

Start with the discovery dispute. On December 29, 2023, Plaintiffs filed a notice of discovery requests in the state case, (No. 50, Doc. 1-1, #19), and then, about nine months later, a motion to compel discovery in that case, as well, (*id.* at #20). Among the items Plaintiffs sought were documents that the National Credit Union Administration (NCUA)—a federal agency that supervises and regulates federally chartered credit unions—owns. (No. 50, NCUA Statement of Interest, Doc. 13-15). NCUA, however, instructed Defendants not to produce those documents in state-court discovery on penalty of sanction. (No. 50, Doc. 12-1, #206–07). Why? Because NCUA's *Touhy* regulations[2] require litigants (and anyone else) to request documents NCUA owns directly from NCUA, not through the judicial process. (*See id.*; *see also* No. 50, Doc. 13-15, #428–31). So, upon receiving NCUA's instructions, Defendants informed Plaintiffs and the state court of their inability to produce the requested documents. (No. 50, Doc. 12-1, #196–99). Then, on November 4, 2024, NCUA filed a Statement of Interest in the state court reiterating that Plaintiffs hadn't followed the proper procedure to obtain the documents at issue. (No. 50, Doc. 13-15).

---

[2] Under 5 U.S.C. § 301, federal agencies "may prescribe regulations for … the custody, use, and preservation of its records, papers, and property." Those regulations are known as *Touhy* regulations after the seminal case upholding agencies' authority to create them: *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

But all of that was to no avail. On January 28, 2025, the state-court judge granted (in relevant part) Plaintiffs' motion to compel and warned of contempt proceedings if Defendants did not turn over the NCUA-owned documents. (No. 50, Doc. 13-16).

That order inspired NCUA—which, to be clear, is not formally a party to the state-court case—to remove *only* the discovery proceedings to this Court on February 3, 2025. (No. 50, Notice of Removal, Doc. 1, #4–5). As further explained below, in NCUA's view, it is entitled to a federal forum under 28 U.S.C. § 1442(a)(1) and (d)(1): the federal officer removal statute. Specifically, NCUA complains that because of its sovereign immunity, the state court lacked subject-matter jurisdiction to enter the order compelling production of its documents—an order that circumvented its *Touhy* regulations. (*Id.* at #4).

Now turn to the second route this same state-court dispute traveled to federal court—the conservatorship. It arose because, separate from the discovery dispute, the National Credit Union Administration Board (the NCUA Board) invoked its authority under 12 U.S.C. § 1786(h)(1)(A)–(B) and placed BHFCU into a conservatorship, appointing itself Conservator. (No. 53, Doc. 1-3, #9–12). That arrangement became effective on January 10, 2025. (No. 53, Doc. 14, #1254 n.1). With the Conservatorship in place, the NCUA Board then removed the *entire* state-court case to this Court on February 4, 2025. (No. 53, Notice of Removal, Doc. 1). According to the NCUA Board, the Conservatorship made it party to the lawsuit, in turn making the case removable under 12 U.S.C. § 1789(a)(2) and 28 U.S.C. § 1331. (*See id.* at #2).

4

That leaves the second state-court case (the "0781" one). On April 16, 2024, as the discovery conundrum was unfolding in the first state-court case, Plaintiffs filed a second state-court complaint. It echoes many of the same grievances they raised in the first complaint—in other words, that BHFCU's officers and directors had violated the credit union's bylaws and engaged in improper conduct. (No. 57, Compl., Doc. 3). This Complaint, however, does not challenge the allegedly unlawful merger between BHFCU and MyUSA—in fact, it does not name MyUSA as a defendant at all. (*See id*.). Plaintiffs again seek a declaratory judgment enforcing their rights as members, as well as a declaratory judgment voiding certain board nominations, meetings, and elections. (*Id*. at #262–63). And they assert a breach of fiduciary duty and negligence claim. (*Id*. at #263).

The NCUA Board's conservatorship over BHFCU impacted this case, too, or at least so the NCUA Board claims. The NCUA Board removed this state-court action on February 5, 2025—a day after it removed the first state-court action. (No. 57, Notice of Removal, Doc. 1).

To sum it all up, the Court has three proceedings before it: (1) the discovery dispute from the first state-court case, which NCUA removed; (2) the entire first state-court case, which the NCUA Board removed; and (3) the entire second state-court case, which the NCUA Board also removed.

Plaintiffs disagree that this Court is a proper forum for any of those three proceedings. And while there are a few minor nuances in their three motions, Plaintiffs generally seek remand on four theories: (1) NCUA and the NCUA Board

5

did not timely remove, (2) NCUA and the NCUA Board waived removal by seeking relief in the state court, (3) the real Defendants here are not federal agencies or officers who can remove under § 1442, and (4) the *Rooker-Feldman* doctrine prevents Defendants from re-litigating state-court decisions in this Court. (No. 50, Doc. 13, #245; No. 53, Doc. 11, #835; No. 57, Doc. 10, #293).

NCUA and the individual Defendants responded to Plaintiffs' motion in the first federal case. (No. 50, Docs. 16, 17). As did the NCUA Board and the individual Defendants in the second two federal cases. (No. 53, Docs. 14, 15; No. 57, Docs. 13, 14).[3] And Plaintiffs replied to those responses in all three cases. (No. 50, Doc. 18; No. 53, Doc. 16; No. 57, Doc. 15). So the matters are now ripe.

## LEGAL STANDARD

A motion to remand challenges the Court's subject-matter jurisdiction over the dispute removed from state court. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006). A party may remove an action from state court if the federal court to which the action is removed would otherwise have had original jurisdiction. 28 U.S.C. § 1441(a). The defendant, as the removing party, bears the burden of proving that the federal court has jurisdiction in response to a motion for remand. *Eastman*, 438 F.3d at 549. The Court's determination of its jurisdiction over the removed action is limited to the legal bases the removing defendant asserted in its timely filed notice of removal. *Miller v. Adamo Grp.*, 1:22-cv-14, 2022 WL 1013090, at *3 (S.D. Ohio Apr.

---

[3] The "individual Defendants" include Margaret Hale, Rodney Hale, Lisa Parks, John David Terrill, Jordan Terrill, Robert J. Fraley, Roger Knabel, Vincent Lovejoy, James Hall, Ernest W. Howard, James C. Miles, and Kevin Dreyer. They joined NCUA's and the NCUA Board's oppositions to remand in all three cases. (No. 50, Doc. 17; No. 53, Doc. 15; No. 57, Doc. 14).

5, 2022); 28 U.S.C. § 1446(a) (explaining that the removing party must file "a notice of removal … containing a short and plain statement of the grounds for removal"). In evaluating the asserted grounds for removal, a district court is not limited to the factual allegations in the complaint. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1087 n.11 (6th Cir. 2010). Rather, it enjoys wide discretion in the evidence it may review to assess its subject-matter jurisdiction. *Id.* But despite that latitude, "removal jurisdiction is assessed based on the facts as they existed at the time of removal." *Total Quality Logistics, LLC v. Summit Logistics Grp., LLC*, 606 F. Supp. 3d 743, 747 (S.D. Ohio 2022).

## LAW AND ANALYSIS

Although the three motions to remand turn on largely the same issues, they implicate different removing entities and different state-court cases, so the Court will address them each separately. But before turning to the analysis, the Court offers a brief word on the difference between NCUA and the NCUA Board.

The Federal Credit Union Act (the Act) established NCUA, which is an independent agency within the executive branch of government. 12 U.S.C. § 1752a(a). And the Act authorizes NCUA to perform various functions, such as chartering and regulating federal credit unions, insuring federal and state credit unions, and administering various credit-union-related funds. *Id.* §§ 1754, 1781, 1783, 1790e. Especially relevant here, NCUA, in its regulatory capacity, examines insured credit unions. *Id.* §§ 1756, 1784. In connection with those inspections, NCUA examiners prepare examination reports that analyze the relevant credit union's financial

condition. *Id.* § 1784(a). And NCUA may share those reports with the credit union. *See* 12 C.F.R. § 792.31. But the documents, even when exchanged with the credit union, remain NCUA's property. *Id.*

A Board—made up of individuals whom the President appoints and the Senate confirms—manages NCUA. 12 U.S.C. § 1752a(a), (b)(1). And as manager, the NCUA Board has various powers and duties. Among them is the NCUA Board's ability to appoint itself as conservator of credit unions that meet certain criteria. 12 U.S.C. § 1786(h). For example, the NCUA Board can enter a conservatorship if necessary to conserve the credit union's assets, to protect member's interests, or to address significant undercapitalization. *Id.* § 1786(h)(1)(A), (F). When the NCUA Board becomes conservator, it has "all the powers of the members, the directors, the officers, and the committees of the credit union," *id.* § 1786(h)(8), and succeeds to "all rights, titles, powers, and privileges of the credit union," *id.* § 1787(b)(2).

The cases before the Court involve both NCUA in its role as regulator and the NCUA Board in its role as conservator. At day's end, though, NCUA and the NCUA Board are legally distinct. *NCUA Bd. v. Zovko*, No. 1:13-cv-1430, 2014 WL 12889797, at *2 (N.D. Ohio Nov. 19, 2014) (citing *NCUA Bd. v. Fisher*, 653 F. Supp. 349, 350 (E.D. Mo. 1986)). So the Court will treat them as such, analyzing NCUA's actions as regulator, (which arise in No. 50), separate from the NCUA Board's actions as conservator, (which arise in Nos. 53 and 57). With that nuance sorted, the Court turns to the motions to remand.

**A.      Case Number 1:25-cv-50 Motion to Remand**

Recall that the first federal-court case resulted from NCUA removing, under § 1442(a), only the discovery proceedings nested within the first state-court case. (No. 50, Doc. 1, #1). Plaintiffs' motion to remand attacks that removal on four grounds: (1) untimeliness, (2) waiver, (3) the inapplicability of § 1442(a), and (4) the *Rooker-Feldman* doctrine. (No. 50, Doc. 13, #245). NCUA resists all those arguments. (*See generally* Doc. 16). At bottom, the parties dispute two things: whether NCUA could remove the discovery proceedings at all, and if so, whether some other principle— timing, waiver, or jurisdictional limitations—renders the otherwise legitimate removal invalid. Take each in turn.

Start with whether NCUA has a right to remove under § 1442(a). It does. The federal officer removal statute allows "[t]he United States or any agency thereof" to remove a "civil action ... that is against or directed to" it. 28 U.S.C. § 1442(a)(1). A "civil action" includes "any proceeding (whether or not ancillary to another proceeding)" in which a "judicial order, including a subpoena for testimony or documents, is sought or issued." *Id.* § 1442(d)(1). And an action is "against" the United States or a federal agency if the judgment would "interfere with the public administration." *Miami Herald Media Co. v. Fla. Dep't of Transp.*, 345 F. Supp. 3d 1349, 1363 (N.D. Fla. 2018) (emphasis omitted) (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)).

All those requirements are met here.[4] NCUA is a federal agency. 12 U.S.C. § 1752a(a). The discovery proceedings NCUA removed are a "civil action" as § 1442(d) defines the term since the state-court case involved a judicial order compelling Defendants to turn over NCUA-owned documents. And the motion to compel was "against" NCUA—it obligated Defendants to disclose NCUA-owned documents notwithstanding NCUA's *Touhy* regulations and its non-disclosure directive. That interfered with NCUA's administration of its records. *See Miami Herald*, 345 F. Supp. 3d at 1363; *see also Cowlitz Cnty. v. Univ. of Washington*, No. 3:19-cv-6250, 2020 WL 1890616, at *4 (W.D. Wash. Apr. 16, 2020). In sum, NCUA had a right to remove under § 1442(a).

Having concluded that NCUA *could* remove the discovery proceedings, the next question is whether NCUA *timely* did so. Ultimately, the Court concludes that it did. To explain why, the Court starts with a primer on removal deadlines.

Under typical removal procedure, a defendant must remove a case within thirty days after receiving service or a summons, whichever is sooner. 28 U.S.C. § 1446(b). Or, if the case isn't initially removable, a defendant has thirty days to remove after receiving "an amended pleading, motion, order or other paper" that demonstrates the case has become removable. *Id.* For cases removed under § 1442(a), however, a different removal procedure provision controls:

---

[4] Although some courts have hinted that federal agencies removing under § 1442(a) may need to assert a colorable federal defense to properly remove, *see, e.g.*, *City of Jacksonville v. Dep't of the Navy*, 348 F.3d 1307, 1313 n.2 (11th Cir.2003), the Sixth Circuit has deemed that an unnecessary requirement, *City of Cookeville, Tenn. v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 391 (6th Cir. 2007). In any event, NCUA's assertion of sovereign immunity would qualify as a federal defense. *City of Jacksonville*, 348 F.3d at 1313 n.2.

> Where the civil action or criminal prosecution that is removable under
> section 1442(a) is a proceeding in which a judicial order for testimony or
> documents is sought or issued or sought to be enforced, the 30-day
> requirement of subsection (b) of this section … is satisfied if the person
> or entity desiring to remove the proceeding files the notice of removal
> not later than 30 days after receiving, through service, notice of any such
> proceeding.

28 U.S.C. § 1446(g). In other words, for cases removed under § 1442(a), the thirty-day

removal clock starts to run when the removing entity receives notice of a "proceeding

in which a judicial order for testimony or documents is sought or issued or sought to

be enforced." *Id.*

Since NCUA removed under § 1442(a), § 1446(g)'s timeline applies. And NCUA

beat the thirty-day deadline. It removed on February 3, 2025, (No. 50, Doc. 1), just

six days after the state-court judge entered the order compelling discovery. In other

words, NCUA removed fewer than thirty days after a "proceeding in which a judicial

order for … documents … issued." 28 U.S.C. § 1446(g). That's all that was required

for timely removal. In light of NCUA's timely exercise of its right to remove under

§ 1442(a), the Court concludes that remand is unnecessary for this first federal case.

Plaintiffs, however, insist on remand for a variety of reasons. None persuade.

First, Plaintiffs argue that because the NCUA Board is BHFCU's Conservator, and

thus, "simply in the shoes of a private non-federal party," § 1442(a) does not give

NCUA the right of removal. (No. 50, Doc. 13, #260–65). But that argument mistakes

NCUA for the NCUA Board. As the Court explained, the two are legally distinct

entities. So while Plaintiffs contend that the distinction is "not material" to the

motion to remand, (No. 50, Doc. 18, #697–99), the Court disagrees. Plaintiffs have

cited no cases suggesting that NCUA as regulator is the same, in a legal sense, as the

11

NCUA Board as conservator. True, Plaintiffs point to caselaw highlighting that government entities can act only through their agents. (No. 50, Doc. 18, #698). But it's unclear how that's relevant here. If Plaintiffs mean to argue that NCUA can act only through the NCUA Board, thus blurring any distinction between the two entities, the Court doubts that's the case. Agencies often employ thousands of individuals—more than just board members—to carry out their functions. And here, it's NCUA as a regulating entity that matters, not the NCUA Board.

Plaintiffs next lean on § 1446(b)(3) to argue that NCUA removed too late. (No. 50, Doc. 13, #245–55). Specifically, Plaintiffs say that the state-court complaint and "numerous motions, arguments, pleadings, and 'other papers,'" raised federal grounds for removal, making clear that the case was removable and should have started the thirty-day clock. (*Id.* at #245 (citing § 1443(b)(3)). At the very latest, they say, NCUA's statement of interest (which it filed on November 4, 2024) should have triggered the removal deadline. (*Id.* at #245–46). And because NCUA did not remove until February 3, 2025, it was at least two months late. (*See id.* at #251).

Even accepting (without deciding) that Plaintiffs are right about various state-court filings raising grounds for removal, Plaintiffs' argument falls short. That's because the operative removal provision here is not § 1446(b); it's § 1446(g). And under § 1446(g), what triggers the thirty-day deadline is notice that "a judicial order for … documents is sought or issued or sought to be enforced." As discussed, NCUA complied with that deadline by removing six days after the state court's order

compelling disclosure issued. So the cases Plaintiffs cite concerning "other papers" and § 1446(b)(3), (*see* No. 50, Doc. 13, #246–55), offer them no help.

Of course, NCUA did have notice that a judicial order for documents was *sought* (as opposed to *issued*) on either September 18, 2024, when Plaintiffs moved to compel discovery, or on October 21, 2024, when Plaintiffs supplemented their motion to compel. (No. 50, Doc. 1-1, #20–21). But failing to remove within thirty days of those occurrences didn't render their removal untimely. As various courts have noted, § 1446(g)'s text expressly contemplates multiple trigger points for removal: upon notice that "a judicial order for … documents is sought *or* issued *or* sought to be enforced." 28 U.S.C. § 1446(g) (emphasis added); *Miami Herald*, 345 F. Supp. 3d at 1366–67; *In re Pennsylvania*, No. 13-cv-1871, 2013 WL 4193960, at *11 (E.D. Pa. Aug. 15, 2013). Plaintiffs offer no argument why the Court should ignore § 1446(g)'s plain text. The Court is therefore satisfied that NCUA's removal within thirty days of that second trigger point—notice that a judicial order for documents issued—was timely.

Plaintiffs next urge that NCUA waived its right to remove by seeking "affirmative relief" in state court. (No. 50, Doc. 13, #255–60). They point to the following filings to demonstrate waiver: Defendants' motion to dismiss, Defendants' opposition to the motion to compel discovery, Defendants motion for a stay of proceedings, the NCUA Board's motion for substitution, and NCUA's statement of interest. (No. 50, Doc. 13, #256–57).

Plaintiffs are right on the law: "[A] *defendant* may constructively waive the right to remove by taking *substantial action* in state court that manifests a

willingness to litigate on the merits." *Robertson v. U.S. Bank, N.A.*, 831 F.3d 757, 761 (6th Cir. 2016) (emphasis added). But at least two problems surface when it comes to application. For one, NCUA is not a defendant in this case; it's an interested party. And until it filed a statement of interest, NCUA wasn't involved in the suit at all. So even if NCUA knew of the lawsuit before the discovery dispute arose because of its regulatory authority over BHFCU, as Plaintiffs contend, that knowledge changes nothing when it comes to waiver. As a non-party, NCUA couldn't waive a non-existent right to removal (at least until the discovery dispute arose and § 1446(g) came into play).

For another, among the filings to which Plaintiffs point as indicating waiver, NCUA filed only one—the statement of interest. And in that statement, NCUA did nothing more than explain its *Touhy* regulations and why an order compelling disclosure of the NCUA-owned documents would flout those regulations. (No. 50, Doc. 13-15). True, NCUA requested that the state-court deny Plaintiffs' motion to compel. (*Id.* at #429). But that's hardly an "affirmative action" (as Plaintiffs put it) or a "substantial action" manifesting a willingness to litigate the discovery dispute on the merits (as the Sixth Circuit puts it). If anything, the statement was an attempt to *avoid* having to litigate the discovery issue, which doesn't amount to waiver. *See Vistas de Canovanas I, Inc. v. Fed. Deposit Ins. Corp.*, 266 F. Supp. 3d 563, 570–71 (D.P.R. 2017). The Court is therefore not convinced that NCUA waived its right to removal.

Finally, Plaintiffs complain that the Court lacks jurisdiction to consider the discovery proceedings under the *Rooker-Feldman* doctrine. (No. 50, Doc. 13, #265–68). To Plaintiffs' credit, at first blush, this seems just the sort of case that might fall into *Rooker-Feldman*'s purview: NCUA as the "state-court loser[] complaining of injuries caused by [the] state-court" order on Plaintiff's motion to compel and "inviting district court review and rejection" of that order. *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020). Ultimately, though, that's not the case. "[U]nlike *Rooker* or *Feldman*, the [NCUA] was not a party in the state court." *Johnson v. De Grandy*, 512 U.S. 997, 1006 (1994). So in removing the case to this Court, NCUA "merely seeks to litigate its [discovery] case for the first time." *Id.* That means its claims are properly before the Court. *Id.*

For these reasons, the Court **DENIES** Plaintiffs' Motion to Remand to State Court (No. 50, Doc. 13).

## B.    Case Number 1:25-cv-53 Motion to Remand

The next case involves the NCUA Board as Conservator, not NCUA as regulator. And here, the NCUA Board removed the entire state-court action (the "0927" one), not merely the discovery proceedings. So while Plaintiffs press the same arguments for remand as before, (*compare* No. 50, Doc. 13, *with* No. 53, Doc. 11), the legal analysis differs. Ultimately, though, the result remains the same—no remand.

The Court again begins with whether the NCUA Board has a right to remove the entire state-court action. Under 12 U.S.C. § 1787(b)(2), when the NCUA Board acts as conservator of a credit union, it becomes a successor in interest to that credit

15

union. And 12 U.S.C. § 1789(a)(2) explains that any civil suit in which the NCUA Board "shall be a party" is "deemed to arise under the laws of the United States." The NCUA Board, in turn, "may … remove any such action, suit, or proceeding from a State court." 12 U.S.C. § 1789(a)(2). In other words, when the NCUA Board becomes a party to a case by way of conservatorship, it can remove that case.

With those statutes in mind, the Court concludes that the NCUA Board does have a right to remove under those statutes, though there is admittedly one wrinkle. The NCUA Board appointed itself Conservator of BHFCU on January 8, 2025, (No. 53, Doc. 1-3, #12), which became effective upon service on January 10, 2025, (No. 53, Doc. 14, #1254 n.1). So at that point, the NCUA Board succeeded to "all rights, titles, powers, and privileges" of BHFCU. 12 U.S.C. § 1787(b)(2)(A). The NCUA Board, however, was never formally substituted as the real party in interest in state court, (No. 53, Doc. 14, #1258), so one could quibble about whether § 1789(a)(2)—which allows the NCUA Board to remove suits to which it is a "party"—permitted removal.

Ultimately, the lack of formal substitution does not impact the NCUA Board's right to remove. When it became Conservator, the NCUA Board succeeded "by operation of law" to BHFCU's rights, titles, powers, and privileges. 12 U.S.C. § 1787(b)(2)(A). So it was then—January 10, 2025—that the NCUA Board became a party to the state-court action as a matter of law. *See FDIC v. N. Savannah Props., LLC*, 686 F.3d 1254, 1259–60 (11th Cir. 2012) (finding that the Federal Deposit Insurance Corporation (FDIC) could remove before formal substitution in state court based on its analogous statute); *Woburn Five Cents Sav. Bank v. Robert M. Hicks,*

*Inc.*, 930 F.2d 965, 969–70 (1st Cir. 1991) (treating "the FDIC as a full party as a matter of law at the time of appointment since, at that time, the bank ceases to operate independently").[5] And as a party, the NCUA Board has a right to remove.[6]

That leads to the question of timeliness. When the NCUA Board has a right to remove under § 1789(a)(2), it still must "follow[] any procedure for removal … in effect." 12 U.S.C. § 1789(a)(2). Here, the parties agree that the applicable procedure arises out of § 1446(b), (No. 53, Doc. 11, #835; No. 53, Doc.14, #1256–57), so the Court will focus its attention on those timelines. Other courts have identified a few potential dates that trigger § 1446(b)'s thirty-day removal deadline in situations where a federal agency becomes involved as a conservator or receiver. Some courts have held that the timeline starts upon a successor in interest's (like a conservator's or receiver's) substitution as a party. *T & M Dental Lab, Inc. v. First Indus. Bank*, 714 F. Supp. 798, 799–800 (E.D. La. 1989). Other courts have determined that the clock runs from the date the relevant entity becomes the successor in interest, regardless of formal substitution. *FDIC v. Norwood*, 726 F. Supp. 1073, 1076 (S.D. Tex. 1989).

---

[5] The Sixth Circuit has said that FDIC's statutory banking framework under the Financial Institutions Reform, Recovery, and Enforcement Act is "similar" to NCUA's statutory framework under the Federal Credit Union Act. *Perna v. Health One Credit Union*, 983 F.3d 258, 269–70 (6th Cir. 2020). So the Court finds caselaw involving removals by FDIC persuasive, and thus relies on them here.

[6] The state-court never formally substituted the NCUA Board as the real party in interest. But that wasn't for lack of effort. The NCUA Board moved in state court to substitute as the real party in interest. (No. 53, Doc. 14, #1258). Plaintiffs, however, apparently planned to oppose the motion, and the state court declined to expedite briefing. (*Id.*). So, to avoid letting the thirty-day removal window lapse, the NCUA Board removed the suit before the state-court judge ruled on the motion to substitute. (*Id.*).

Still others have hinted that the deadline expires thirty days after the successor in interest files a notice of substitution. *See N. Savannah Props.*, 686 F.3d at 1259–60.

Here, the Court need not choose among these. Even if the earliest possible trigger date—the genesis of the conservatorship—applies, the NCUA Board timely removed. As the Court noted, on January 10, 2025, the NCUA Board assumed the role of BHFCU's Conservator. (No. 53, Doc. 14, #1254 n.1). And it removed the state-court action twenty-five days later on February 4, 2025. (No. 53, Doc. 1). The state-court action is therefore properly before the Court.

Plaintiffs again disagree. And they raise largely the same counterarguments as before: the NCUA Board as Conservator cannot remove under § 1442(a), untimeliness, waiver, and the *Rooker-Feldman* doctrine.

The Court can quickly dispose of Plaintiffs' first counterargument. The NCUA Board removed this case under 12 U.S.C. § 1789(a)(2) (which gives the Court original jurisdiction over civil suits in which the NCUA Board is a party) and 28 U.S.C. § 1441 (which permits removal of actions over which the Court has original jurisdiction). (No. 53, Doc. 1, #1). Plaintiffs' argument resisting the NCUA Board's removal under § 1442(a) is therefore misplaced. (No. 53, Doc. 11, #850–55).

Plaintiffs next contest the timeliness of the NCUA Board's removal. They agree that § 1446(b)'s timeline controls. (*Id.* at #835–37). But they disagree about when the thirty-day clock started running. According to Plaintiffs, because their Complaint contained "actual evidence of NCUA's interests," the clock started when they served Defendants. (*Id.* at #835–36). They add that "numerous motions, arguments,

18

pleadings, and 'other papers'" likewise raised grounds for removal, the latest being NCUA's statement of interest on November 4, 2024. (*Id.*). In short, they argue that because BHFCU could have removed the case in the last two years but did not, and because the NCUA Board, as Conservator, has filled BHFCU's shoes, the NCUA Board's removal at this stage was simply too late. (No. 53, Doc. 16, #1275–79).

Again assuming (without deciding) that BHFCU could have removed the case based on the various state-court filings that Plaintiffs say raised federal grounds for removal, Plaintiffs' argument fails. Even though the NCUA Board, as Conservator, succeeds to BHFCU's rights, title, and interest, it is not the same party as BHFCU. (*See* No. 53, Doc. 1-3, #11 (explaining that BHFCU would "continue to operate during the conservatorship")); *see also* 12 U.S.C. § 1787(b) (describing the NCUA Board's powers to operate credit unions under conservatorship). What matters here, then, is when *the NCUA Board* could remove. And under § 1789(a)(2)'s plain language, once the NCUA Board became a "party" to the state-court suit, the action became removable. What BHFCU did or did not do before then is of no moment.[7] *Cf. T & M Dental Lab*, 714 F. Supp. at 800 (noting that even where state-court procedural rules

---

[7] Plaintiffs also argue that both NCUA and the NCUA Board have invoked a version of the "revival exception" to renew the applicable removal period under § 1446. (No. 50, Doc. 18, #701–02; No. 53, Doc. 16, #1277–78). But neither NCUA nor the NCUA Board have argued anything of the sort. Under the revival exception, "a defendant might theoretically be allowed to 'revive' the original removal period under § 1446 where the plaintiff files an amended complaint that so changes the nature of the action as to constitute substantially a new suit begun that day." *State ex rel. Slatery v. Tennessee Valley Auth.*, 311 F. Supp. 3d 896, 903 (M.D. Tenn. 2018) (cleaned up). Here, Plaintiffs filed no amended complaints; NCUA and the NCUA Board simply invoked their statutory rights to a federal forum and removed the relevant proceedings and cases. The revival exception, therefore, has no place in these cases.

allowed the FDIC to file motions as a non-party, the FDIC timely removed the case under its jurisdiction-granting statute once it officially became a party).

The cases Plaintiffs cite in support of their untimeliness argument actually prove the Court's point. In *FDIC v. Generes*, for example, the FDIC became a receiver for a bank, then litigated in state court for two years before removing the case. 650 F. Supp. 66, 67–68 (N.D. Ill. 1986). Because the FDIC failed to remove within thirty days of becoming the real party in interest, the court deemed the removal untimely. *Id.* at 68. In other words, the court reviewed FDIC's removal effort based on FDIC's own conduct, not that of the predecessor bank.

The same is true in *FDIC v. Brooks*, 652 F. Supp. 745 (N.D. Tex. 1985). There, the court determined that § 1446(b)'s deadline started to run when FDIC—who had been appointed receiver of the originally-sued bank—received a letter from the state-court judge, directing FDIC to prepare an order for court approval. *Brooks*, 652 F. Supp. at 746. And because FDIC ignored the letter, waited six months to formally intervene, then removed the case, the court found FDIC's removal untimely. *Id.* The point, though, is that the court determined FDIC's timeliness by considering FDIC's own conduct. *See id.* By contrast, Plaintiffs here ask the Court to determine whether the NCUA Board timely removed based on papers BHFCU received and conduct BHFCU took before the NCUA Board became Conservator. The cases to which Plaintiffs point, including *Brooks*, don't take that tack, and neither does the Court.

If Plaintiffs instead mean to argue that the NCUA Board could have invoked its statutory authority to place BHFCU under conservatorship sooner, thus

accelerating when the NCUA Board could remove, that argument is not well-taken either. Under the Act, the NCUA Board has various powers it may use to effectuate its statutory goals and duties. *See, e.g.*, 12 U.S.C. §§ 1766, 1786. The removal statutes, such as § 1446, for example, say nothing about how or when the NCUA Board must make out-of-court decisions (like whether to place a credit union under conservatorship). True, those out-of-court decisions may impact the § 1446 removal timeline. But nonetheless, they do not make removal inherently untimely or improper. Only once the removal deadlines are triggered does timeliness become a concern.

Plaintiffs' argument concerning waiver fails for much the same reason. They claim that BHFCU's decision to file various motions in the state court indicates a willingness to waive its right to remove. (No. 53, Doc. 11, #846–47). So through the conservatorship, they say, that waiver applies equally to the NCUA Board. (*Id.* at #847). No doubt, removal after nearly two years of litigation is somewhat of an oddity. But that quirk doesn't change that the NCUA Board's right to remove arose, by statute, when it became BHFCU's Conservator. Moreover, the cases Plaintiffs cite to support their waiver argument are inapt. Take *Heafitz v. Interfirst Bank of Dallas*, 711 F. Supp. 92, 96 (S.D.N.Y. 1989), for example. There, FDIC was appointed receiver for a bank. *Heafitz*, 711 F. Supp. at 93. After that appointment, FDIC moved to amend a previously-filed motion to dismiss in state court so it could "add new grounds for dismissal" based on FDIC's newfound presence in the suit. *Id.* at 96. The court, reasoning that FDIC had taken "affirmative action" by "actively seeking a decision

on the merits," found that FDIC had waived its right to remove. *Id.* at 96–97. Nothing of the sort happened here. After becoming Conservator, the only action the NCUA Board took in state court was filing a motion to substitute and filing a motion to stay proceedings (which it had statutory authority to do, 12 U.S.C. § 1787(b)(12)(A), and which it later withdrew). (No. 53, Doc. 1-4, #25–27). Neither of those things amount to an effort to litigate the merits of the suit. The NCUA Board, in sum, did not waive its right to remove.

That leaves Plaintiffs' *Rooker-Feldman* argument. The NCUA Board, admittedly, neglected to address this issue in its opposition. Even so, the doctrine doesn't apply for essentially the same reasons it didn't apply in the previous federal case: the NCUA Board was not a party to the state-court case until January 10, 2025, when it became Conservator. And the only efforts it made after that were filing a motion to substitute and motion to stay proceedings. So in removing the case to this Court, the NCUA Board "merely seeks to litigate its [] case for the first time." *Johnson*, 512 U.S. at 1006. The Court thus has subject-matter jurisdiction over the removed case. *See* 12 U.S.C. § 1789(a)(2).

Accordingly, the Court **DENIES** Plaintiffs' Motion to Remand to State Court (No. 53, Doc. 11).

## C. Case Number 1:25-cv-57 Motion to Remand

That leaves the last federal case, which mirrors the second federal-case in most respects: it revolves around the NCUA Board removing the entire state-court action (this time, the "0781" one). The only meaningful difference is that the state-court

22

action at issue here did not involve the discovery dispute that the first state-court action did. (No. 57, Doc. 13, #615). Excepting that difference, the parties briefing in this third federal case is nearly identical to that of the second federal case. (*Compare* No. 53, Docs. 11, 14, 16, *with* No. 57, Docs. 10, 13, 15).

For that reason, the Court's analysis concerning the second federal case applies with equal force here. In short, the NCUA Board had a right to remove the entire case under § 1789(a)(2). And it timely did so. It removed on February 5, 2025, (No. 57, Doc. 1), just a day after it removed the first state-court case and twenty-six days after the NCUA Board became Conservator. And for the reasons already explained, Plaintiffs' counterarguments fail to persuade the Court that the NCUA Board's removal was otherwise improper.

The Court therefore **DENIES** Plaintiffs' Motion to Remand to State Court (No. 57, Doc. 10).

## CONCLUSION

For the above reasons, the Court **DENIES** Plaintiffs' Motions to Remand to State Court (No. 50, Doc. 13; No. 53, Doc. 11; No. 57, Doc. 10).

**SO ORDERED.**

June 13, 2025
**DATE**                                             **DOUGLAS R. COLE**
                                                     **UNITED STATES DISTRICT JUDGE**

23